[Civ. No. 4278. Third Appellate District.—June 9, 1931.]

JOHN HALLORAN, Appellant, v. G. A. GREENE, Administrator, etc., Respondent.

Eli F. Bush and John H. Miller for Appellant.

Thomas P. White for Respondent.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal from a judgment against the plaintiff in an action to establish a resulting trust in one-half of the property of the estate of said deceased. It is alleged that an oral agreement existed between the parties constituting a joint venture or partnership

by the terms of which they were to share equally in the profits derived from buying and selling real property.

Alice E. A. Longley resided in New York. She was separated from her husband. She was subsequently divorced. Prior to her divorce she met the plaintiff in 1903. He is a carpenter and builder. They lived together in illicit relationship until the time of her death September 12, 1927. In 1904 they moved from New York to Texas. In 1906 they acquired a residence in Los Angeles. Soon thereafter Mrs. Longley returned to New York. The plaintiff went to San Francisco, where he engaged in the business of carpentering in his own behalf for a year or more. The parties resumed their residence at Los Angeles about 1908 and continued their former relationship. This status continued until the death of Mrs. Longley. For a period of time the parties rented and used a safe deposit box. Each party maintained separate bank accounts during the entire period in which they lived together. The plaintiff claims to have derived the sum of about $3,000 from the sale of a livery-stable in New York in 1901, and that he contributed $1,000 toward the first purchase of a lot in Los Angeles in the spring of 1908. Mr. Halloran testified that Mrs. Longley contributed $2,000 to the purchase of this lot and that they borrowed a sum of money with which he constructed a dwelling-house on it; that they sold the property for the sum of $5,500 and invested the profit from this sale in a touring car. There is no evidence of a subsequent contribution of cash actually belonging to the plaintiff which was invested in real property, except that he claims that pursuant to an oral agreement he had one-half interest with Mrs. Longley in all their real estate transactions. The plaintiff admits that Mrs. Longley had $5,000 at the time they began to live together, and that she received remittances from time to time from her former husband. Mrs. Longley purchased several other lots, upon which bungalows and houses were constructed. The plaintiff consulted her about each of these projects and superintended the construction of the buildings. Titles to the lots were invariably taken in her name or in that of her son. The administrator, who went by the name of George A. Greene, is her son. Upon one occasion when a deed to certain lots was taken in the joint names of the plaintiff and Mrs. Longley, at her request, he promptly executed to her

a quitclaim deed thereof, without objection or assertion of title thereto. Some of these properties were sold. The entire proceeds therefrom were paid to Mrs. Longley and deposited in her bank account, without objection on the part of the plaintiff and without claim to a division thereof. The building program was invariably financed by Mrs. Longley. She drew her checks in payment for all materials furnished and labor performed. Sometimes she drew checks in favor of the plaintiff with which he paid some of these bills for materials and labor. The maintenance and clothing of the plaintiff were also paid for by Mrs. Longley. During eighteen years in which they lived together Mrs. Longley drew checks in favor of the plaintiff aggregating the sum of $81,242. This was an annual average of over $4,500 which she paid to him. At no time during this period of years did he ever demand an accounting of profits from the real estate business or a division of the proceeds of sales. He kept no account of his alleged interest in the properties. The plaintiff frequently demanded and received money or checks from Mrs. Longley for his personal use. On several occasions he also demanded that she make a will in his favor.

Mrs. Longley died intestate September 12, 1927, leaving an estate consisting of real and personal property which was appraised at the sum of $53,204. Upon proceedings duly had the defendant George A. Greene, who is the son of the deceased, was appointed and qualified as administrator of her estate. This suit was commenced to declare a resulting trust in this property in favor of the plaintiff. It is alleged that the estate consists of property acquired by the plaintiff and Mrs. Longley as a result of a series of joint adventures or a partnership business in real estate transactions. The court adopted findings favorable to the defendant except with respect to certain Liberty bonds which were in the hands of the administrator of the value of $500, which were found to be the property of the plaintiff. No controversy exists over the title to these Liberty bonds. Judgment was entered accordingly. From this judgment the plaintiff has appealed.

The appellant contends that the findings and judgment are not supported by the evidence; that the record discloses the fact that the properties in the hands of the administrator were acquired as a result of joint adventures participated in by the plaintiff and Mrs. Longley or as a partnership

between them in real estate transactions, and that the administrator holds one-half of the property in trust for the benefit of the plaintiff.

The appellant's claim to one-half of the estate of the deceased is based entirely upon an oral agreement which he testified occurred between them in 1908, as follows: "She suggested that we go in the real estate business and buy and sell property, and that I build houses on it. . . . Q. Then what did you say? A. I said, 'Yes, we will do that'. Q. What, if anything, was said about the interest of each person in the partnership? . . . A. We would divide equally. . . . Q. And what reply did you make? A. I said, 'Yes'." The evidence of this alleged agreement was adduced over the objection of the defendant that it is in contravention of subdivision three of section 1880 of the Code of Civil Procedure, which provides: "The following persons cannot be witnesses: . . . (3) Parties or assignors of parties to an action or proceeding . . . against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person."

The ruling of the court upon this objection was correct. This testimony was admissible under the pleadings in this case. ▮ It is established as the law of this state that a claim of title to real property which is held by the representative of the estate of a deceased person, does not bar the claimant from becoming a witness in his own behalf in an action to establish a trust in the property or to quiet title thereto. (*Myers* v. *Reinstein*, 67 Cal. 89 [7 Pac. 192]; *Calmon* v. *Sarraille*, 142 Cal. 638, 642 [76 Pac. 486]; *Bollinger* v. *Wright*, 143 Cal. 292, 296 [41 A. L. R. 1048, 76 Pac. 1108].)

▮ There is no merit in the appellant's contention that the deceased violated her agreement to will property to him. It is conceded that no written agreement was ever made by the deceased to devise or bequeath property to the appellant. His claim rests entirely upon an alleged oral agreement to do so. This oral agreement is in conflict with the statute of frauds and void, if indeed it was ever made. Section 1624 of the Civil Code provides in part: "The following contracts are invalid, unless the same, or some note or memorandum thereof is in writing, and subscribed by the party to

be charged, or by his agent: . . . (7) An agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will.''

The findings and judgment to the effect that the property in the hands of the administrator was not acquired by the deceased as a result of joint adventures or a partnership in real estate transactions and that the plaintiff therefore has no title thereto, is amply supported by the testimony. The evidence is conflicting regarding the relationship of the parties under which the property was acquired, and this court is therefore bound by the judgment. The evidence of the plaintiff's title to any of his money which was claimed to have been contributed to these transactions is unsatisfactory. The source of Mrs. Longley's funds and credit is undisputed. She financed each transaction in her own name. She maintained the banking account in her own name. All the proceeds of sales were deposited to her credit. During a period of eighteen years over which these transactions continued, she was never asked to divide the proceeds of sales or render an accounting thereof. The only excuse which the plaintiff offers for permitting the business to be transacted by and the funds to be retained in the name of Mrs. Longley, is the assertion that she said, in 1904, when their illicit relationship commenced: ''Jack, your people are very bitter against you for living with me the way you are doing, and for my safety, you had better put the property in my name.'' He testified: ''Whenever I wanted the money I asked Mrs. Longley for it, and she gave me a check. . . . Q. Suppose you wanted money for your personal needs, clothing and so forth, what would you do? . . . A. Oh, I would get a check . . . (from) Mrs. Longley.'' Two other witnesses did testify to the effect that they had heard Mrs. Longley say the plaintiff and she were ''building houses together'', or that they ''were interested fifty-fifty in the building''.

Upon the contrary there is evidence of the impeachment of the plaintiff's testimony in the manner provided by section 2051 of the Code of Civil Procedure, which entitled the court to disregard his statement of the alleged agreement to participate in the profits of the real estate business. Several witnesses also testify to facts which squarely contradict

his theory of joint adventures or of a partnership in real estate transactions.

Albert Van Deerlin was a friend and frequent visitor at the home of Mrs. Longley in Los Angeles during her entire residence in that city. He lived in that home for the period of one year. He participated in many discussions between Mr. Halloran and Mrs. Longley regarding their building program and financial affairs. He testified that on one occasion he heard her say in the presence of the plaintiff: "It is my money that is being spent, and I won't have this. . . . Jack . . . doesn't care whether I lose money or not, it is none of his money, none of his business." On another occasion when the plaintiff was demanding money from her, in the presence of her son, Mr. Greene, she said: "I see that it is always paid, always from my purse, . . . I am getting tired of supporting both of you." He never heard her say that Halloran had any interest in the property. He never heard Halloran assert that he had an interest in the property.

Ethel Van Deerlin was also a visitor in the home of Mrs. Longley from 1913 to the time of her death. She often heard Mrs. Longley say that she owned the property. She was shown about the home, and Mrs. Longley told her she owned the property and that many of the furnishings had been acquired by her abroad. On one occasion while she was eating dinner at the Longley home, Mr. Halloran was given credit for preparing the meal. The witness complimented him as a good cook. Mrs. Longley said, "He has to do something good to earn his board."

Anna Brant knew Mr. Halloran and Mrs. Longley in New York as early as 1894. She also visited the Longley home in Los Angeles. In 1927, she overheard a discussion between Mr. Halloran and Mrs. Longley regarding a building which he proposed to erect on the Bronson property. Mrs. Longley said to him: "You go ahead, if you have money,—you can build, but not with my money." In June of the same year, the witness was present in the Longley parlor when Mr. Halloran entered the room in bad temper, and addressing himself to Mrs. Longley, said: " 'God damn you, didn't you make that will yet?' and she looked at him and she smiled. She says, 'No, I didn't make no will, and I am not going to.' " The witness frequently heard him cursing Mrs. Long-

ley in the vilest of language, and always demanding from her money. Upon one occasion she heard him apply to Mrs. Longley the lowest of epithets and said: "You give me some money, you give me a check for $2,000, or either give me half the property." The witness also heard Mrs. Longley say: "There was no reason why he shouldn't go to work and get a job and not be depending on me,—depending on a woman to support him." One week before the death of Mrs. Longley, the witness heard her say to Halloran: "Jack, there is a bill there . . . for you to pay," to which he replied, "I am not going to pay it; I haven't got the money." Mrs. Longley then said, "You have got $3,000 of my money from my rents." The witness further said Mrs. Longley told him that morning "to get out". And he said, "All right, I will get out." Nothing was said by him during these conversations about any claim to an interest in the property.

Lucile Curtis was a friend and visitor in the home of Mrs. Longley for about two weeks in 1921. She often saw Mr. Halloran there. She never heard him claim an interest in any of the property.

George Greene is the son of the deceased. He lived in her home at Los Angeles for several years. He testifies to many quarrels which occurred between his mother and Mr. Halloran. The plaintiff became angered at Greene and presented him with a bill for several thousand dollars which he claimed Greene owed to his mother. Greene called his mother into the controversy, and she said to the plaintiff: "I want you to take your clothes and get out of here. . . . This ·is my home and my property, and what right have you got to say how much Dot owes me?" Halloran made no protest against her unqualified claim to the property.

The record in this case indicates that the plaintiff was contented to become the superintendent and builder of houses for Mrs. Longley with a hope that she might ultimately further compensate him by devising her property to him in the event of her death.

The findings and judgment are amply supported by the evidence.

The judgment is affirmed.